UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 17-23582-CIV-MORENO**

MIRACLES HOUSE INC.; JANE DOE #1;
JANE DOE #2; JANE DOE #3; JANE DOE #4;
JANE DOE #5; and JOHN DOE #1,

        Plaintiffs,

vs.

JUSTIN SENIOR, Secretary of the Agency for
Health Care Administration, and BARBARA
PALMER, Director of the Agency for Persons
with Disabilities,

        Defendants.

_____/

## ORDER

    THIS CAUSE came before the Court upon (1) Plaintiffs' Motion for Emergency Temporary Restraining Order and Preliminary Injunction **(D.E. 7)**, filed on **October 3, 2017**, and (2) Defendants' Partial Motion to Dismiss Plaintiff Miracles House, Inc. for Lack of Standing **(D.E. 14)**, filed on **October 26, 2017**.

    THE COURT has considered the motions, the responses, the replies, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

    **ADJUDGED** as follows:

        (i)    Plaintiffs' Motion for Emergency Temporary Restraining Order and Preliminary Injunction **(D.E. 7)** is **DENIED**.

        (ii)    Defendants' Partial Motion to Dismiss Plaintiff Miracles House, Inc. for Lack of Standing **(D.E. 14)** is **GRANTED**.

## INTRODUCTION

This case concerns competing Medicaid rights—namely, a Medicaid recipient's right to choose a Medicaid provider without state interference, and a state's right to maintain quality medical treatment for some of its most vulnerable citizens.

### A. Background

Miracles House, Inc. ("Miracles") operates two group homes that offer healthcare services to the permanently disabled. It previously owned the now-closed "Amazing Wonders" assisted living facility. Those two types of healthcare facilities involve subtle, yet important, distinctions.[1] Specifically, "assisted living facilities" and "group homes" are regulated by different state agencies and require separate licenses. In Florida, the Agency for Health Care Administration regulates assisted living facility licenses and oversees the quality of care at those facilities. By contrast, Florida's Agency for Persons with Disabilities is responsible for monitoring group homes and issuing licenses to group-home operators. In this case, Miracles held an assisted living facility license to operate Amazing Wonders (the "Assisted Living License"), and a separate license to operate the two Miracles group homes (the "Group Home License").

More importantly, Miracles is—or was—a Medicaid provider.[2] Qualified Medicaid providers must maintain a facility license and enter into a Medicaid Provider Agreement with Florida's Agency for Persons with Disabilities. These qualified providers have "Medicaid Provider Authorization," which allows them to obtain a Medicaid provider number and receive Medicaid reimbursement for certain healthcare services. If a Medicaid provider loses its Medicaid Provider Authorization—by, *e.g.*, suspension of its license or termination of its Medicaid Provider Agreement—the provider loses the right to furnish Medicaid services and receive payment from Medicaid. 42 C.F.R. § 431.51(b)(1).

---

[1] (Pl.'s Reply 3 ("As a point of clarification group homes and assisted living facilities operate separately, are governed by separate agencies and under completely different policies.").)

[2] Plaintiffs say Miracles provided Medicaid services only at its group homes—not at the Amazing Wonders assisted living facility.

## B. **Summary of Facts**

On July 21, 2017, Florida's Agency for Health Care Administration suspended Miracles' Assisted Living License associated with its ownership and operation of the Amazing Wonders nursing home. Defendant Justin Senior—head of the Agency for Health Care Administration—contends that the Agency suspended Miracles' Assisted Living License because of the deficient patient care at Amazing Wonders evidencing Miracles' failure to maintain appropriate conditions and provide adequate medical services at the assisted living facility. The Agency for Healthcare Administration purportedly inspected Amazing Wonders three times during May and June 2017, and found that "the residents of this facility [were not] residing in a safe and decent living environment free from abuse and neglect." (Def. Senior's Br. 3–4 (citing Exh. A. ¶¶ 23–24).)[3] The Agency's report added: "No resident of an assisted living facility should be placed or maintained in such an environment." *Id.* Because of these deficiencies, the Agency for Healthcare Administration suspended Miracles' Assisted Living License and closed Amazing Wonders.

But as noted above, Miracles held two licenses: the suspended Assisted Living License and the Group Home License. Thus, despite losing the Assisted Living License, Miracles retained its Group Home License permitting it to continue operating the two group homes. Plaintiffs emphasize the separateness of the group homes and Amazing Wonders, arguing that the problems at Amazing Wonders do not reflect the quality of care administered at Miracles' group homes. Plaintiffs note that whereas "Amazing Wonders [had] only been in existence and operating for less than 2 years," the group homes have "been in existence for many years with no verified complaints." (Pl.'s Reply 3.) Additionally, Plaintiffs claim that Miracles provided Medicaid services *only* at its group homes—not at Amazing Wonders. (Pl.'s Repl. 3 ("The Medicaid recipients for whom the Medicaid number is being utilized all reside at Miracles House. The patients at the assisted living facility were private residents or received assistance

---

[3] Although Defendant Senior cites "Exh. A. ¶¶ 23–24," he did not file any exhibits with his Response in Opposition to Plaintiffs' Motion (D.E. 16).

through other government programs.").) As such, Plaitniffs contend that the events at Amazing Wonders should not affect Miracles' status as a qualified Medicaid provider in its group homes.

Defendants reject this argument. They effectively treat Amazing Wonders and Miracles' group homes as one in the same, arguing that Amazing Wonders' deficiencies reflect Miracles' medical competence and qualifications—*or lack thereof.* According to Defendant Senior, the problems at Amazing Wonders, and subsequent suspension of Miracles' Assisted Living License "led [the Agency for Health Care Administration] to conclude that Miracles was no longer fit to perform Medicaid services in a professionally competent, safe, legal and ethical manner under 42 C.F.R. § 431.51(b)(1)." (Def. Senior's Resp. 4.) In other words, the state determined that Miracles' ownership of an assisted living facility with such extensive deficiencies undermined Miracles' fitness to provide Medicaid services even at entirely separate entities. The Agency for Health Care Administration therefore terminated Miracles' Medicaid Provider Authorization and Medicaid number effective September 2, 2017. Without a Medicaid provider number, Miracles no longer qualified as a Medicaid Services Provider, prompting the Agency for Persons with Disabilities to terminate its Medicaid Provider Agreement with Miracles.

Plaintiffs reject Defendants' claimed justifications for terminating Miracles' Medicaid Provider Authorization and Agreements. Plaintiffs argue that Miracles was "an excellent Medicaid provider" and note that the Delmarva Foundation—a non-profit organization that conducts annual audits of group homes in Miami—awarded Miracles a 94% on its December 2016 audit. Plaintiffs also contend that, one week before terminating Miracles' Medicaid Provider Authorization and Medicaid Provider Agreements, the Agency for Persons with Disabilities visited Miracles' group homes and reported no violations. Accordingly, Plaintiffs allege that the state terminated Miracles' Medicaid Provider Authorization and its Medicaid Provider Agreements for reasons unrelated to Miracles' fitness to provide medical services. Indeed, Plaintiffs suggest the state acted at the behest of a single Agency employee—Kirk Ryon—who allegedly has a personal vendetta against Miracles' owner.

In short, Plaintiffs allege that Defendants "imposed a sanction of exclusion from Medicaid on Miracles House without a finding of a 'violation' by Miracles House and without providing Miracles House the opportunity for a pre-deprivation hearing as state law requires." (Pl.'s Mot. 8.) It asks the Court for a temporary restraining order and, after further proceedings, a preliminary injunction restraining Defendants, his employees, agents, and successors in office from terminating the Medicaid provider agreements of Plaintiff Miracles House.

## C. <u>Statutory Framework of the Medicaid Program</u>

Medicaid is a joint federal-state program that helps states provide health care to the poor. *See* 42 U.S.C. §§ 1396–1396v; *see also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990); *Pharm. Research & Mfrs. of Am. v. Meadows*, 304 F.3d 1197, 1199–1200 (11th Cir. 2002). States choose whether to participate in Medicaid; those that do must comply with federal statutory and regulatory requirements. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health & Rehab. Servs.*, 225 F.3d 1208, 1211 (11th Cir. 2000). State agencies administer Medicaid relief pursuant to a plan approved by the U.S. Department of Health and Human Services. *Meadows*, 304 F.3d at 1199–1200. The Agency for Health Care Administration "administers the Medicaid program in Florida." *Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1326 (S.D. Fla. 2006) (citing Fla. Stat. §§ 409.901(14), 409.902 (2004)).

Federal law requires participating states to make certain services available to all Medicaid recipients. *See* 42 U.S.C. § 1396a(a)(10). States may offer additional medical services if they wish. *Id.*; *see also* 42 U.S.C. § 1396d(a)(12). But once "a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law." *Doe v. Chiles*, 136 F.3d 709, 714 (11th Cir. 1998).

## DISCUSSION

## A. <u>Arguments</u>

Plaintiffs contend that (i) the Agency for Health Care Administration wrongfully terminated Miracles' Medicaid Provider Authorization, and (ii) the Agency for Persons with

Disabilities wrongfully terminated its Medicaid Provider Agreements with Miracles. Specifically, Plaintiffs suggest that the state terminated Miracles' Medicaid Provider Authorization and Provider Agreements for reasons unrelated to its fitness to perform safe, effective medical services—a violation of the free-choice-of-provider provision. *See* 42 U.S.C. § 1396a(a)(23). As such, Plaintiffs seek a temporary restraining order and preliminary injunction reinstating Miracles' Medicaid Provider Authorization and Medicaid Provider Agreements.

The Agency for Health Care Administration argues that it rightfully terminated Miracles' Provider Authorization because—contrary to Plaintiffs' assertions—it determined that Miracles could not "perform Medicaid services in a professionally competent, safe, legal and ethical manner under 42 C.F.R. § 431.51(b)(1)." (Def. Senior's Resp. 4.) And the Agency for Persons with Disabilities contends that it had to terminate the Medicaid Provider Agreement once Miracles lost its Medicaid provider status. According to Defendants, Plaintiffs "simply ask this Court to allow them to continue to receive Medicaid services from a provider who is no longer qualified." (Def. Senior's Resp. 7–8; Def. Palmer's Resp. 8.)

## B. Standing to Enforce Medicaid's Free-Choice-of-Provider Provision

The federal Medicaid statute includes a free-choice-of-provider provision. *See* 42 U.S.C. § 1396a(a)(23). "That provision mandates that 'any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services.'" *Planned Parenthood of Gulf Coast, Inc. v. Gee,* 862 F.3d 445, 458 (5th Cir. 2017).

Courts agree that the free-choice-of-provider provision creates a private right enforceable under § 1983. *See Planned Parenthood Se., Inc. v. Bentley,* 141 F. Supp. 3d 1207, 1213 (M.D. Ala. 2015) (citing cases recognizing this private right of action). However, only Medicaid recipients—*not Medicaid providers*—may enforce the free-choice-of-provider right. *See Nutritional Support Servs., L.P. v. Miller,* 826 F.Supp. 467, 468–70 (N.D. Ga. 1993) (concluding that Medicaid providers had no enforcement right under the free-choice-of-provider provision);

6

*see also Silver v. Baggiano*, 804 F.2d 1211, 1217 (11th Cir. 1986) (holding that Medicaid recipients have enforceable rights under § 1396a(a)(23), but declining to decide whether Medicaid providers have the same rights).

Defendants argue in their contemporaneously filed motion to dismiss that because Plaintiff Miracles House, Inc. is a (former) Medicaid provider, it lacks standing to assert a claim under 42 U.S.C. § 1396a(a)(23). Indeed, "[t]he statute speaks only in terms of recipients' rights rather than providers' rights, so the right guaranteed by § 1396a(a)(23) is vested in Medicaid recipients rather than providers." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 460 (5th Cir. 2017). Because the right guaranteed by the free-choice-of-provider provision vests only in Medicaid recipients rather than providers, the Court **GRANTS** Defendants' motion to dismiss Miracles House, Inc.

However, the *individual* Miracles Plaintiffs in this action—as Medicaid recipients—have standing to pursue the requested relief under the free-choice-of-provider provision. 42 U.S.C. § 1396a(a)(23). As such, the Court must address whether these Individual Plaintiffs are entitled to a preliminary injunction.

## C. Preliminary Injunction

### 1. Preliminary Injunction Standard

A plaintiff seeking a preliminary injunction under Federal Rule of Civil Procedure 65 must establish each of the following: "(1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue." *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983). The plaintiff must prove all four elements before the court may grant this "extraordinary and drastic remedy." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

### 2. Legal Analysis

#### a. Free-Choice-of-Provider Rights

Medicaid's free-choice-of-provider provision guarantees Medicaid recipients "the right to choose among a range of qualified providers without government interference." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). However, as Defendants emphasize, this right to choose is limited to *qualified* providers. The Supreme Court established long ago that a Medicaid recipient "has no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be unqualified." *O'Bannon*, 447 U.S. at 786.

States have the right enforce minimum standards of care for Medicaid providers. Where a "disqualification decision [is] connected to the state's enforcement of its health and safety regulations," that decision does not violate Medicaid recipients' rights under the free-choice-of-provider provision. *Id.* at 461 ("This makes sense: If it were otherwise, patients could freely intervene in state enforcement actions against facilities that violate health and safety standards."). On the other hand, a state violates the free-choice-of-provider provision if its decision to disqualify a Medicaid provider is "unrelated to the provider's fitness to treat Medicaid patients." *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 978 (7th Cir. 2012) (noting that "the term 'qualified' as used in § 1396a(a)(23) unambiguously relates to a provider's fitness to perform the medical services the patient requires").

#### b. Likelihood of Success on the Merits

As discussed, this Court cannot grant a preliminary injunction unless Plaintiffs establish "a substantial likelihood that [they] ultimately will prevail on the merits of the claim." *Oldham*, 707 F.2d at 1185. Here, that requires Plaintiffs to show a substantial likelihood that—during the merits stage of the case—they will prove the state terminated Miracles' Medicaid Provider Authorization "independent of any action to enforce statutory and regulatory standards." *Planned Parenthood of Gulf Coast, Inc.*, 862 F.3d at 460.

However, the Individual Plaintiffs in this case are unlikely to succeed on the merits of their claim because of 42 U.S.C. § 1320a-7—"License Revocation and Exclusion"—which states:

> (b)    Permissive Exclusion: The Secretary may exclude the following individuals and entities from participation in any Federal health care program
>
>     (4)    License Revocation and Suspension. Any individual or entity—
>
>         (A)    whose license to provide health care has been revoked or suspended by any State licensing authority, or who otherwise lost such a license, for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity; or
>
>         (B)    who surrendered such a license while a formal disciplinary proceeding was pending before such an authority and the proceeding concerned the individual's or entity's professional competence, professional performance, or financial integrity.

42 U.S.C. § 1320a-7; *see also* 42 C.F.R. § 1002.3 (providing that "a State may exclude an individual or entity from participation in the Medicaid program for any reason for which the Secretary could exclude that individual or entity from participation in Federal health care programs under sections 1128, 1128A, or 1866(b)(2) of the Act").

Defendants assert that the Agency for Health Care Administration suspended the license of Miracles' "Miami-based assisted living facility because of significant deficiencies related to the health, safety and welfare of the [assisted living facility's] residents." (Def. Senior's Resp. 4.) And although Plaintiffs may object to the suspension, they concede that (i) the state suspended Amazing Wonders' Assisted Living License, (ii) Miracles' held that Assisted Living License, and (iii) Amazing Wonders is a subsidiary of Miracles. (Pl.'s Reply 2.) Furthermore, the state's reasons for suspending Miracles' Assisted Living License—*i.e.*, that the living conditions at

Amazing Wonders "were not safe or decent"—bear on Miracles' "professional competence" and "professional performance."

In short, Defendants have a "for-cause" justification, related to medical competency, for determining that Miracles "was no longer qualified under federal and state law to furnish Medicaid services to anyone." (Def. Senior's Resp. 4–5.) As such, Plaintiffs are not likely to prevail on their claim that the state's termination of Miracles' Medicaid Provider Authorization violated the free-choice-of-provider provision. *See* 42 U.S.C. § 1396a(a)(23). Because Plaintiffs are not likely to succeed on the merits of their claim, their Motion for Emergency Temporary Restraining Order and Preliminary Injunction is **DENIED**.[4]

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

 (i) Plaintiffs' Motion for Emergency Temporary Restraining Order and Preliminary Injunction **(D.E. 7)** is **DENIED**.

 (ii) Defendants' Partial Motion to Dismiss Plaintiff Miracles House, Inc. for Lack of Standing **(D.E. 14)** is **GRANTED**.

DONE AND ORDERED in Chambers at Miami, Florida, this ____ of November 2017.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

[4] To the extent Plaintiffs claim they are entitled to a "pre-deprivation hearing," they are incorrect. The Supreme Court rejected that precise argument in *O'Bannon*, holding that an adverse impact on Medicaid recipients resulting from the government's enforcement of minimum standards of care "does not amount to a deprivation of any interest in life, liberty, or property." *See O'Bannon*, 447 U.S. at 787.