UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-23582-CIV-MORENO

MIRACLES HOUSE, INC., et al.,

        Plaintiffs,

vs.

JUNIOR SENIOR, Secretary of Agency for Health Care Administration, and BARBARA PALMER, Director of Agency for Persons with Disabilities,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case concerns competing Medicaid rights—namely, a Medicaid recipient's right to choose a Medicaid provider without state interference, and a state's right to maintain quality medical treatment for some of its most vulnerable citizens. In July 2017, Defendants Justin Senior, Secretary of the Agency for Health Care Administration, and Barbara Palmer, Director of the Agency for Persons with Disabilities, took action against Miracles House ("Miracles") which terminated its ability to obtain reimbursement for certain healthcare services it provides to Medicaid recipients. Plaintiffs are Medicaid recipients who received healthcare services from Miracles until Defendants terminated its Medicaid reimbursement privileges.[1] They allege that Defendants deprived them of their right to seek Medicaid services from a provider of their choice, and in doing so, violated federal Medicaid statutes and the United States Constitution. Defendants moved for summary judgment, contending that they acted in accordance with the law

---

[1] The Court previously granted Defendants' motion to dismiss Miracles from the case. As discussed in the Court's November 9, 2017 Order (D.E. 18), Miracles—as a (former) Medicaid provider—lacks standing because only Medicaid recipients may assert a claim under the free-choice-of-provider provision.

and did not violate Plaintiffs' rights. For the reasons discussed below, the Court agrees with Defendants. Accordingly, Defendants motion for summary judgment is granted.

## I. BACKGROUND

Miracles operates two group homes that offer healthcare services to the permanently disabled. It previously owned the now-closed "Amazing Wonders" assisted living facility. Those two types of healthcare facilities involve subtle, yet important, distinctions. Specifically, "assisted living facilities" and "group homes" are regulated by different state agencies and require separate licenses. In Florida, the Agency for Health Care Administration regulates assisted living facility licenses and oversees the quality of care at those facilities. By contrast, Florida's Agency for Persons with Disabilities is responsible for monitoring group homes and issuing licenses to group-home operators. In this case, Miracles held an assisted living facility license to operate Amazing Wonders (the "Assisted Living License"), and a separate license to operate the two Miracles group homes (the "Group Home License").

More importantly, Miracles is—or was—a Medicaid provider.[2] Qualified Medicaid providers must maintain a facility license and enter into a Medicaid Provider Agreement with Florida's Agency for Persons with Disabilities. These qualified providers have "Medicaid Provider Authorization," which allows them to obtain a Medicaid provider number and receive Medicaid reimbursement for certain healthcare services. If a Medicaid provider loses its Medicaid Provider Authorization—by, e.g., suspension of its license or termination of its Medicaid Provider Agreement—the provider loses the right to furnish Medicaid services and receive payment from Medicaid. 42 C.F.R. § 431.51(b)(1).

## II. SUMMARY OF FACTS

On July 21, 2017, Florida's Agency for Health Care Administration suspended Miracles' Assisted Living License associated with its ownership and operation of the Amazing Wonders

---

[2] Plaintiffs say Miracles provided Medicaid services only at its group homes—not at the Amazing Wonders assisted living facility.

nursing home. Defendant Justin Senior—head of the Agency for Health Care Administration—contends that the Agency suspended Miracles' Assisted Living License because of the deficient patient care at Amazing Wonders evidencing Miracles' failure to maintain appropriate conditions and provide adequate medical services at the assisted living facility. The Agency for Healthcare Administration purportedly inspected Amazing Wonders three times during May and June 2017, and found that "the residents of this facility [were not] residing in a safe and decent living environment free from abuse and neglect." (D.E. 16 at 4.) The Agency's report added, "[n]o resident of an assisted living facility should be placed or maintained in such an environment." *Id.* Because of these deficiencies, the Agency for Healthcare Administration suspended Miracles' Assisted Living License and closed Amazing Wonders.

But as noted above, Miracles held two licenses: the suspended Assisted Living License and the Group Home License. Thus, despite losing the Assisted Living License, Miracles retained its Group Home License permitting it to continue operating the two group homes. Plaintiffs emphasize the separateness of the group homes and Amazing Wonders, arguing that the problems at Amazing Wonders do not reflect the quality of care administered at Miracles' group homes. Plaintiffs note that whereas "Amazing Wonders [had] only been in existence and operating for less than 2 years," the group homes have "been in existence for many years with no verified complaints." (D.E. 17 at 3.) Additionally, Plaintiffs claim that Miracles provided Medicaid services *only* at its group homes—not at Amazing Wonders. As such, Plaintiffs contend that the events at Amazing Wonders should not affect Miracles' status as a qualified Medicaid provider in its group homes.

Defendants reject this argument. They effectively treat Amazing Wonders and Miracles' group homes as one in the same, arguing that Amazing Wonders' deficiencies reflect Miracles' medical competence and qualifications—or lack thereof. According to Defendant Senior, the problems at Amazing Wonders, and subsequent suspension of Miracles' Assisted Living License "led [the Agency for Health Care Administration] to conclude that Miracles was no longer fit to perform Medicaid services in a professionally competent, safe, legal and ethical manner under 42

3

C.F.R. § 431.51(b)(1)." (D.E. 16 at 4.) In other words, the state determined that Miracles' ownership of an assisted living facility with such extensive deficiencies undermined Miracles' fitness to provide Medicaid services even at separate entities. The Agency for Health Care Administration therefore terminated Miracles' Medicaid Provider Authorization and Medicaid number effective September 2, 2017. Without a Medicaid provider number, Miracles no longer qualified as a Medicaid Services Provider, prompting the Agency for Persons with Disabilities to terminate its Medicaid Provider Agreement with Miracles.

Plaintiffs reject Defendants' claimed justifications for terminating Miracles' Medicaid Provider Authorization and Agreements. Plaintiffs argue that Miracles was "an excellent Medicaid provider" and note that the Delmarva Foundation—a non-profit organization that conducts annual audits of group homes in Miami—awarded Miracles a 94% on its December 2016 audit. Plaintiffs also contend that, one week before terminating Miracles' Medicaid Provider Authorization and Medicaid Provider Agreements, the Agency for Persons with Disabilities visited Miracles' group homes and reported no violations. Accordingly, Plaintiffs allege that the state terminated Miracles' Medicaid Provider Authorization and its Medicaid Provider Agreements for reasons unrelated to Miracles' fitness to provide medical services. Indeed, Plaintiffs suggest the state acted at the behest of a single Agency employee—Kirk Ryon—who allegedly has a personal vendetta against Miracles' owner.

In short, Plaintiffs allege that Defendants "imposed a sanction of exclusion from Medicaid on Miracles House without a finding of a 'violation' by Miracles House and without providing Miracles House the opportunity for a pre-deprivation hearing as state law requires." (D.E. 7 at 8.) It asks the Court for a temporary restraining order and, after further proceedings, a preliminary injunction restraining Defendants, his employees, agents, and successors in office from terminating the Medicaid provider agreements of Plaintiff Miracles House.

### III. DISCUSSION

#### A. Arguments

4

Plaintiffs contend that (i) the Agency for Health Care Administration wrongfully terminated Miracles' Medicaid Provider Authorization, and (ii) the Agency for Persons with Disabilities wrongfully terminated its Medicaid Provider Agreements with Miracles. Specifically, Plaintiffs suggest that the state terminated Miracles' Medicaid Provider Authorization and Provider Agreements for reasons unrelated to its fitness to perform safe, effective medical services—a violation of the free-choice-of-provider provision. *See* 42 U.S.C. § 1396a(a)(23). Plaintiffs further contend that Defendants' actions violated their freedom of association, equal protection, and due process rights under the First and Fourteenth Amendments.

The Agency for Health Care Administration argues that it rightfully terminated Miracles' Provider Authorization because—contrary to Plaintiffs' assertions—it determined that Miracles could not "perform Medicaid services in a professionally competent, safe, legal and ethical manner under 42 C.F.R. § 431.51(b)(1)." (D.E. 15 at 8; D.E. 16 at 4.) Furthermore, the Agency for Persons with Disabilities contends that it had to terminate the Medicaid Provider Agreement once Miracles lost its Medicaid provider status. According to Defendants, Plaintiffs "simply ask this Court to allow them to continue to receive Medicaid services from a provider who is no longer qualified."

### B. **Statutory Framework of the Medicaid Program**

Medicaid is a joint federal-state program that helps states provide health care to the poor. *See* 42 U.S.C. §§ 1396–1396v; *see also Pharm. Research & Mfrs. of Am. v. Meadows*, 304 F.3d 1197, 1199–1200 (11th Cir. 2002). States choose whether to participate in Medicaid; those that do must comply with federal statutory and regulatory requirements. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health & Rehab. Servs.*, 225 F.3d 1208, 1211 (11th Cir. 2000). State agencies administer Medicaid relief pursuant to a plan approved by the U.S. Department of Health and Human Services. *Meadows*, 304 F.3d at 1199–1200. The Agency for Health Care

Administration "administers the Medicaid program in Florida." *Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1326 (S.D. Fla. 2006) (citing Fla. Stat. §§ 409.901(14), 409.902 (2004)).

Federal law requires participating states to make certain services available to all Medicaid recipients. *See* 42 U.S.C. § 1396a(a)(10). States may offer additional medical services if they wish. *Id.*; *see also* 42 U.S.C. § 1396d(a)(12). But once "a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law." *Doe v. Chiles*, 136 F.3d 709, 714 (11th Cir. 1998).

## C. Analysis

### 1. Free-Choice-of-Provider Rights

Medicaid's free-choice-of-provider provision guarantees Medicaid recipients "the right to choose among a range of qualified providers without government interference." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785 (1980). However, as Defendants emphasize, this right to choose is limited to *qualified* providers. The Supreme Court established long ago that a Medicaid recipient "has no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be unqualified." *Id.* at 786.

States have the right to enforce minimum standards of care for Medicaid providers. Where a "disqualification decision [is] connected to the state's enforcement of its health and safety regulations," that decision does not violate Medicaid recipients' rights under the free-choice-of-provider provision. *Id.* at 461. "This makes sense: If it were otherwise, patients could freely intervene in state enforcement actions against facilities that violate health and safety standards." *Id.* On the other hand, a state violates the free-choice-of-provider provision if its decision to disqualify a Medicaid provider is "unrelated to the provider's fitness to treat Medicaid patients." *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 978 (7th Cir. 2012) (noting that "the term 'qualified' as used in § 1396a(a)(23) unambiguously relates to a provider's fitness to perform the medical services the patient requires").

42 U.S.C. § 1320a-7 discusses "License Revocation and Exclusion." It states that "[t]he Secretary may exclude the following individuals and entities from participation in any Federal health care program[:]"

>     (4)    Any individual or entity—
>
>         (A)    whose license to provide health care has been revoked or suspended by any State licensing authority, or who otherwise lost such a license, for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity; or
>
>         (B)    who surrendered such a license while a formal disciplinary proceeding was pending before such an authority and the proceeding concerned the individual's or entity's professional competence, professional performance, or financial integrity.

42 U.S.C. § 1320a-7; *see also* 42 C.F.R. § 1002.3 (providing that "a State may exclude an individual or entity from participation in the Medicaid program for any reason for which the Secretary could exclude that individual or entity from participation in Federal health care programs under sections 1128, 1128A, or 1866(b)(2) of the Act").

Plaintiffs contend that 42 U.S.C. 1320a-7 does not apply in this case because it refers only to entities licensed "to provide *healthcare*" and that Amazing Wonders assisted living facility "was *not* licensed to provide healthcare." This argument is technically incorrect under the relevant statutes and factually unavailing given the state's health-related reasons for suspending Miracles' Assisted Living License. First, Florida's "Health Care Licensing Procedures Act" governs licensing of certain health care facilities and specifically applies to "Assisted Living Facilities." *See* Fla. Stat. §§ 408.801–408.802. Second, Defendants assert that the Agency for Health Care Administration suspended the license of Miracles' "Miami-based assisted living facility because of significant deficiencies related to the health, safety and welfare of the [assisted living facility's] residents." (D.E. 16 at 4.) And although Plaintiffs may object to the

suspension, they concede that (i) the state suspended Amazing Wonders' Assisted Living License, (ii) Miracles' held that Assisted Living License, and (iii) Amazing Wonders is a subsidiary of Miracles. (D.E. 17 at 2.) Furthermore, the state's reasons for suspending Miracles' Assisted Living License—*i.e.*, that the living conditions at Amazing Wonders "were not safe or decent"—bear on Miracles' "professional competence" and "professional performance."

In short, Defendants have a "for-cause" justification, related to medical competency, for determining that Miracles is "no longer qualified under federal and state law to furnish Medicaid services to anyone." (D.E. 16 at 4–5.) Plaintiffs therefore cannot prevail on their claim that the state's termination of Miracles' Medicaid Provider Authorization violated the free-choice-of-provider provision. *See* 42 U.S.C. § 1396a(a)(23).

### *2. Constitutional Claims*

Plaintiffs contend that Defendants' actions violated their freedom of association, equal protection, and due process rights under the First and Fourteenth Amendments. All of those claims fail as a matter of law.

First, courts agree that "[t]here are two distinct forms of freedom of association: (1) freedom of intimate association, protected under the Substantive Due Process Clause of the Fourteenth Amendment; and (2) freedom of expressive association, protected under the Freedom of Speech Clause of the First Amendment." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 458 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018). The second form—"freedom of expressive association"—does not apply here because, as Plaintiffs concede, "there has been no infringement on the Plaintiffs' rights to speech, assembly, and religion." (D.E. 26 at 11.) With respect to the "freedom of intimate association," the Supreme Court has explained that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984) (extending the right of intimate association to marriage,

child bearing, child rearing, and cohabitation with relatives). However, the commercial relationship between a patient and a healthcare provider does not "attend the creation and sustenance of a family" and, thus, does not qualify for constitutional protection. *Id.* at 619.

Second, "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Twp. of Wakefield*, 247 U.S. 350, 352 (1918). State action generally is "presumed valid" if it is "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Plaintiffs claim that the Agency for Healthcare Administration singled out the Plaintiffs "by revoking [Miracles'] Medicaid provider number knowing that it would definitely lead to [the Agency for Persons with Disabilities] terminating the Medicaid Waiver Services Agreement." (D.E. 26 at 11.) But setting aside their conclusory assertions, Plaintiffs have failed to produce any evidence establishing that Defendants' actions were unrelated to the government's legitimate interest in maintaining minimum standards of care, or were otherwise motivated by animus or ill-will. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565–66 (2000). Accordingly, Plaintiffs' equal protection claim fails.

Finally, Defendants' conduct did not violate Plaintiffs' Due Process rights. The Supreme Court has held that an adverse impact on Medicaid recipients resulting from the government's enforcement of minimum standards of care "does not amount to a deprivation of any interest in life, liberty, or property." *See O'Bannon*, 447 U.S. at 787. Thus, "enforcement by [the Agency for Healthcare Administration and the Agency for Persons with Disabilities] of their valid regulations did not directly affect the patients' legal rights or deprive them of any constitutionally protected interest in life, liberty, or property." *Id.* at 790.

## IV. CONCLUSION

For the reasons discussed, Plaintiffs' claims fail as a matter of law. It is therefore ADJUDGED that Defendants' motion for summary judgment is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th of March 2018.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record